Boyce v. Tallerman.

83   575
s183s115

## William D. Boyce v. Godfrey A. Tallerman.

1.  NOTICE—*To Owner, of Defects in Chimney, Not Necessary.*—Where a person is injured by the falling of a defective smoke-stack, erected under and in pursuance of a contract with the owner, the owner's liability in no way depends upon a notice to him of the insecurity of said stack.

2.  DAMAGES—*When Not Excessive.*—Where the damages awarded are more than the court would have been inclined to give, but are not manifestly against the weight of the evidence, it will not be justified in reversing the judgment.

Action for Personal Injuries.—Trial in the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding.  Verdict and judgment for plaintiff; appeal by defendant.  Heard in the Branch Appellate Court at the October term, 1898.  Affirmed.  Opinion filed July 11, 1899.

Statement.—This action was brought in the court below, by Godfrey A. Tallerman, appellee, against the University Club, a corporation, the National Electric Construction

Company, a corporation, and the appellant, William D. Boyce. The National Electric Construction Company became insolvent, or went out of existence, prior to the time of the trial of this cause, and the case, as to it, was dismissed by plaintiff.

At the conclusion of the evidence for plaintiff the case was also dismissed as to the University Club, and prosecuted as to Wm. D. Boyce only, who, appellee alleges, is liable, together with the other two defendants named, for causing injury to the person of appellee.

The facts of the case are substantially as follows :

On the 20th day of November, A. D. 1894, at about 10 A. M., appellee, while engaged in his regular duties in the abstract office of Handy & Co., at 94 Washington street, Chicago, was struck on the head, back and hand, by pieces of glass falling from the sky-light, about eighteen feet above his head. These pieces of glass were knocked from the sky-light by a section of a smoke-stack which had fallen, or been blown down upon the sky-light. This smoke-stack, from which the section above referred to fell, was built at the rear of the adjacent buildings known as Nos. 112, 114, 116, 118, Dearborn street. What is known as the Boyce building comprises 112, 114. What is known as the University Club building comprises 116, 118.

The fee of the ground upon which the Boyce building stands is owned by Julia Sherman. The fee of the ground upon which the University Club stands, belongs to the Story estate. The two buildings are owned by Wm. D. Boyce and the University Club, respectively.

The smoke-stack in question is erected upon the dividing line between these two pieces of property; one-half of its base, the northern half, rests upon the property of Julia Sherman; the other half of its base rests upon the property belonging to the Story estate.

The stack extended upward to a height of about 158 feet. From its base to the top of the University Club building, which is eight stories in height, the stack stands in a niche between the two buildings, so that on its north, and one-

half of its east side, it is encased by the brick wall of the Boyce building; while on its south, and one-half of its east side, it is encased by the brick wall of the University Club building. Its west side is on the western line of this property, and is exposed. The stack was attached to the University Club building as far as that building went, and for the remainder of its height it was attached to the Boyce building, which is four stories higher than the University Club building. The nature and position of the fastenings which bound the stack to the Boyce building above the University Club building, are described by one of the plaintiff's witnesses as follows:

" There was a fastening at the top of the University Club building, which was about forty feet, I should judge, below the top of the Boyce building. Then there was one steel band about two inches wide, and, I should judge, it was about one-eighth of an inch thick about half way up. That would be about twenty feet from the roof of the University Club building. Then, at the top, there were three chains; I don't know what number they did call them, but they were good heavy chains, fastened to the exhaust pipe up there."

The University Club had leases of all of the ground upon which this stack stood; the southern half of which it leased from the Story estate for a term of ninety-nine years; the northern half of which it leased from Wm. D. Boyce, the appellant, who transferred to it all his rights obtained under a ninety-nine year lease from Julia Sherman. By the term of this lease from Wm. D. Boyce to the University Club, that club was to hold this small piece of ground for all the remainder of the ninety-nine years for which Boyce had originally leased it. So that this property would at the expiration of the University Club's lease revert directly back to Julia Sherman.

All of these leases referred to were made before the erection of the smoke-stack in question, and before the erection of the Boyce building. The smoke-stack was erected to the height of the University Club building before the Boyce building was erected.

The horizontal dimensions of the stack were about three feet by five feet, giving a capacity of flue equal to 2,160 square inches.

By the conditions of the lease from Boyce to the University Club of the northern half of the ground upon which the stack stood, Mr. Boyce reserved the right to use a part of this smoke-stack as a smoke flue for his building, to the extent of a 150 horse-power flue, whenever he should erect a building on the adjacent premises, upon which he afterward did erect the Boyce building.

The National Electric Construction Company was a corporation engaged in the business of generating heat, light and power, and furnishing the same for a consideration to the neighboring buildings.

Before the erection of this smoke-stack the Electric company agreed with the University Club to rent the basement of its building (the University Club) and carry on its business therein, but in order to do so it was necessary that a stack of such dimensions as the one in question should be erected, the business of said Electric company requiring a flue capacity for about 375 horse-power engines, or about 1,280 square inches flue capacity.

As a part consideration for its right to occupy the basement of the University Club the National Electric Company agreed to, and did, erect the smoke-stack in question up to the height of the University Club building, fastening the stack to that building, and subsequently, and at the time of the erection of the Boyce building, the Electric company, acting under its agreement with Boyce, increased the height of the stack to the height of the Boyce building, fastening this upper portion of the stack to the Boyce building. This piece of work was done while the building was in the hands of Mr. Clark, the construction contractor, who erected it for Mr. Boyce.

After the stack had been thus erected, and after the erection of the Boyce building, but before the happening of the injury complained of, Mr. Boyce took possession of the Boyce building, and began making use of his flue privilege

in the stack in question, and was doing so at the time of the said injury.

The Electric company was occupying the basement of the University Club building and was also using this smoke-stack at the time of the said injury.

Appellant admits that appellee was injured (but as to the extent and consequence of this injury no admission is made), and admits that appellee was without fault in the premises.

JOHN A. POST and O. W. DYNES, attorneys for appellant.

EDWARD B. BURLING, attorney for appellee.

MR. JUSTICE HORTON delivered the opinion of the court.

That appellee was injured by the falling of a portion of the smoke-stack referred to in the statement, is conceded. Appellant contends, however, that he is not the person who is liable to appellee for the damages arising from such injury.

By an agreement between appellant and the University Club, appellant leased to said club a part of the land upon which said smoke-stack was erected. The following provisions, with others, are contained in said agreement, viz.:

" Second : In consideration of the demise and lease afore-said, the party of the second part (The University Club) covenants and agrees to and with the party of the first part (Boyce) that it will, within the space of three (3) months next after the date of this agreement, place and erect, or cause to be placed and erected, partly upon the land hereby demised, a wrought iron stack, of at least one hundred and fifty (150) horse-power capacity.

"The party of the second part further covenants and agrees to and with the party of the first part that he may at any time after such stack shall have been erected, and during the term of his demise, insert into said stack and use for his own purposes, until the end of the term hereby demised, a flue of one hundred and fifty (150) horse-power capacity.

"The party of the second party further covenants and agrees that the party of the first part shall at all times have the benefit of so much of the draft of said stack as will enable him fully to use and enjoy his one hundred and fifty (150) horse-power flue aforesaid.

" It is understood by the parties hereto that all repairs and renewals of said stack are to be made by the National Electric Construction Company during the term of a ten-year lease which the party of the second part has made of its basement to said company. But it is covenanted and agreed by the parties hereto that after the lease to said National Electric Construction Company shall have expired, and before it shall have expired, if such construction company shall fail or go out of business, all repairs and renewals shall be made at the joint expense of the parties hereto ; said parties shall pay, respectively, portions of the expense of any such repairs or renewals, proportioned to the number of horse-power capacity in said stack actually used by them respectively, at the time such repairs or renewals become necessary.

" The party of the first part (Boyce) covenants and agrees to carry up said stack at his own expense to the height of any building which he may hereafter erect upon his said premises."

By its certain agreement of even date with said agreement between appellant and said club, said Electric company agreed with appellant, the consideration therefor moving from appellant, " to extend said stack upward at its own expense so that the same shall at all times so long as said company shall remain a tenant of said club, be of at least equal height with any building hereafter erected upon the premises of said Boyce, adjoining said stack, provided, however, that if any such building hereafter erected upon the premises of said Boyce shall exceed one hundred and sixty (160) feet in height, the cost of so much of said stack as shall exceed one hundred and sixty (160) feet in height shall be borne and paid by said Boyce."

Appellant testifies that he did not build said smoke-stack or have anything to do with building it, or furnish material therefor or pay for it, and that he did not know who erected it. This may be entirely correct in the connection and in the sense in which appellant used and intended it, but it is not true in a legal sense under the contracts from which the above quotations are taken. The University Club caused the stack to be erected to the height of its building, by the Electric company. Appellant contracted and agreed

with the University Club to carry up said stack at his own expense to the height of any building which he might thereafter erect upon his said premises. He also made a contract with the Electric company whereby that company agreed to extend said stack to the height of any building thereafter erected upon the premises of appellant adjoining said stack, at its own expense.

After said agreements were made appellant erected a building upon his said premises which was about forty feet higher than the Club building. While the appellant's building was still in the hands of his contractor the Electric company extended said stack up to the height of the Boyce building. Upon the record in this case it must be assumed that the Electric company so extended said stack under its contract with appellant. The appellant used and enjoyed the benefit of said stack with his building, to the extent of a certain portion or per cent of the capacity thereof, all the time after erecting his building, and was so using and enjoying the same at the time appellee was injured by the falling thereof. Appellant is, in law, liable to outside parties for any damages arising from a faulty or defective construction of such extension of said stack. As between appellant and appellee it is immaterial whether the Electric company is or is not also liable, or whether the Electric company is liable over to appellant for any sum it may be compelled to pay on account of the defective construction or fastening of said stack.

From the testimony it seems that a part of the stack fell because that part comprising the extension above the Club building was not properly secured or fastened. For the injury thereby caused to appellee the appellant is liable. Said stack having been erected under and in pursuance of a contract with appellant, his liability in no way depends upon a notice to him of the insecurity of said stack, or upon a demand to abate the nuisance, as urged by his counsel.

Whether the declaration is good and sufficient as against a demurrer is now immaterial. There is no defect in it which is not cured by verdict.

It is also contended that the damages are excessive. It may be that the damages awarded by the jury are more than we should have been inclined to give, but the jury and the trial judge saw appellee and heard his testimony, and saw the other witnesses and heard their testimony. The verdict and judgment are not so excessive or so manifestly against the weight of evidence that this court would be justified in reversing the judgment.

The judgment of the Superior Court is affirmed.